IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| JACK J. GRYNBERG, an individual, | ) | |
| COTUNDO MINERALES S.A., an Ecuadorian | ) | |
| company, RSM PRODUCTION | ) | |
| CORPORATION, a Texas corporation, and | ) | |
| ARCHIDONA MINERALES, S.A., a | ) | |
| Panama corporation. | ) | |
| | ) | |
| Plaintiffs | ) | Civil Action No. _____ |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| IVANHOE ENERGY, INC.,  IVAHOE ENERGY | ) | |
| LATIN AMERICA INC., IVANHOE ENERGY | ) | |
| ECUADOR INC., ROBERT M. FRIEDLAND, | ) | |
| an individual,  DAVID R. MARTIN, an individual, | ) | |
| and JOSE FABRICIO CORREA DELGADO, | ) | |
| an Ecuadoran citizen, and JOHN DOES 1 -10, | ) | |
| potential assignees of Ivanhoe Energy | ) | |
| Ecuador Inc. | ) | |
| | ) | |
| Defendants | ) | |

---

**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL**

---

COME NOW Plaintiffs, Jack J. Grynberg individually, ("Grynberg"), Cotundo

Minerales, S.A., ("Cotundo"), an Ecuadoran corporation, RSM Production Company, a Texas

corporation, ("RSM"), Archidona Minerales S.A., a Panama corporation, ("Archidona "),

through counsel, and file their Complaint against the Defendants Ivanhoe Energy Inc., a

Canadian corporation ("Ivanhoe"), Ivanhoe Energy Latin America Inc., a Canadian company

("Ivanhoe Latin"), Ivanhoe Energy Ecuador Inc., an Canadian company ("Ivanhoe Ecuador"),

(collectively the "Ivanhoe Defendants"), Robert M. Friedland, a Canadian citizen, ("Friedland"),

David R. Martin, a California citizen ("Martin"), and Jose Fabricio Correa Delgado, an

Ecuadoran citizen, ("Correa"), and John Does 1 – 10, potential assignees of Ivanhoe Energy

Ecuador Inc., and for grounds allege:

## I. PARTIES

1.        1.        Plaintiff Jack J. Grynberg is a resident of the State of Colorado and whose

address and principal place of business is 5299 DTC Boulevard, Suite 500, Greenwood Village,

Colorado 80111. Jack J. Grynberg is 76 years old, and is President of Grynberg Petroleum

Company and RSM Production Corporation, and a citizen of the United States and the State of

Colorado.  He is a graduate and a trustee emeritus of the Colorado School of Mines, has been

actively involved in oil and natural gas research, exploration, development and production for

more than fifty (50) years, and is responsible for numerous oil and natural gas field discoveries

and extensions in the United States and overseas.   Grynberg is a Registered Professional

Engineer in good standing in the States of Colorado, South Dakota, Oklahoma and Texas, and a

member of many professional and trade associations, author of numerous publications and holder

of a U.S. patent for the application of laser beams for the continuous detection and identification

of hydrocarbons in the mud stream coming out of a bore hole while drilling.  Grynberg was

appointed by President Ford, was reappointed by President Carter to the Committee on Nuclear

and Alternate Energy of the National Academy of Sciences, and was appointed by President

Clinton to participate in the presidential mission to Russia in March 1994 headed by the late

Secretary of Commerce Ron Brown representing the United States oil and gas industry.

Grynberg has been a speaker at the 5th, 6th and 7th United Nations sponsored conference on

African Oil, Gas and Finance, where he represented the United States at the 7th conference.  For

the past several years he has been a speaker at oil and natural gas international conferences in

London, England, Cape Town, South Africa, Rio de Janeiro, Brazil, Houston, Texas, Barcelona, Spain, Lille, France, and Hamburg, Germany. In addition, Grynberg has been part of an enormous effort over many years to right wrongs in the payment of natural gas royalties to the United States, including royalties to Native Americans.  Over seventy legal actions against over three hundred defendants were brought pursuant to the False Claims Act, 31 U.S.C. § 3729 et seq., and are now pending as part of Multidistrict litigation in the United States District Court for the District of Wyoming, Multidistrict Case No. 99-MD-1293 and the United States Court of Appeals for the 10th Circuit.

2.	Plaintiff Cotundo Minerales, S.A. is an Ecuadoran company, maintains an office at 5299 DTC Boulevard, Suite 500, Greenwood Village, Colorado 80111, USA.

3.	Plaintiff RSM Production Company, a Texas corporation, maintains an office at 5299 DTC Boulevard, Suite 500, Greenwood Village, Colorado 80111, USA.

4.	Plaintiff Archidona Minerales S.A., a Panama corporation, maintains an office at 1222 Barkdall Street, Houston, Texas 77006, USA.

5.	Defendant Ivanhoe Energy, Inc., is a Canadian corporation, whose address and principal place of business is 654 – 999 Canada Place, Vancouver, British Columbia V6C 3E1, Canada.

6.	Defendant Ivanhoe Energy Latin America Inc., is a Canadian corporation, whose address and principal place of business is 654 – 999 Canada Place, Vancouver, British Columbia V6C 3E1, Canada.

7.	Defendant Ivanhoe Energy Ecuador, Inc., is a Canadian corporation, whose address and principal place of business is 654 – 999 Canada Place, Vancouver, British Columbia V6C 3E1, Canada.

8.      Defendant Robert M. Friedland, a Canadian citizen and resident of the United States and Singapore, is the Executive Chairman and CEO of Ivanhoe Energy Inc. whose address and principal place of business is 654 – 999 Canada Place, Vancouver, British Columbia V6C 3E1, Canada.

9.      Defendant David R. Martin, a California resident and citizen, is Executive Co-Chairman of Ivanhoe Energy Inc. whose address and principal place of business is 5060 California Avenue, Bakersfield, California 93309, USA (Tel. 661.869.2887).

10.      At all times mentioned herein, Defendant Jose Fabricio Correa Delgado, an Ecuadoran citizen, maintains an office at the Presidential Palace, Quito, Ecuador.

11.      At all times mentioned herein, Defendants John Does 1 – 10 are potential assignees of Ivanhoe Energy Ecuador, Inc.'s interests in the Pungarayacu Tar Sands Heavy Oil Deposit in the Nation of Ecuador which is the subject matter of this litigation.

## II. JURISDICTION

12.      Plaintiffs hereby incorporate by reference those allegations contained in Paragraphs 1 – 11 as though fully set forth herein.

13.      This Court has personal jurisdiction over the Defendants because sufficient minimum and continuous contacts existed between Defendants and the State of Colorado at all times material hereto. Defendants, or their representatives, contacted Plaintiffs in Colorado using U.S. Mail, telephone, and email. As shown more particularly below, this litigation results from injuries that "arise out of or relate to" activities that are significant and purposefully directed by the Defendants at residents" of Colorado. Keefe v. Kirschenbaum & Kirschenbaum, P.C., 40 P.3d 167, 1271 (Colo. 2002); Archangel Diamond Corp. v. Arkhangelskgeodobycha, 94 P.3d

1208, 1213 (Colo. App. 2003) rev'd on other grounds, <u>Archangel Diamond Corp. v. Lukoil</u>, 123 P.3d 1187 (Colo. 2005). Hence, the Defendants listed above are subject to specific jurisdiction in Colorado.

14.     Subject matter jurisdiction is proper in this Court because Defendants, all of them, and at all times relevant hereto, transacted business in the State of Colorado while domiciled or headquartered in Vancouver, British Columbia, Canada, Bakersfield, California, USA, or in the Nation of Ecuador; the torts that are the subject matter of the Plaintiffs' Complaint occurred in, or were directed toward, the State of Colorado; any fiduciary obligation which is also the subject matter of the Plaintiffs' Complaint was owed in the State of Colorado; any breach of legal or equitable duties which are also the subject matter of the Plaintiffs' Complaint occurred in the State of Colorado.

15.     Jurisdiction is therefore proper under 28 U.S.C. 1332 (diversity) and venue is proper under 28 U.S.C. 1391.

### III. <u>SPECIFIC ALLEGATIONS</u>

16.     Plaintiffs hereby incorporate by reference those allegations contained in Paragraphs 1 – 15 as though fully set forth herein.

17.     At all times relative to Plaintiffs' activity in Canada, Ecuador and other locations, including Colorado, which is the subject of this action, Defendants actively planned, participated and acted in concert to conspire under a common theme and plan to defraud, steal, and reap abundant profits and financial gain through the theft of Plaintiffs' confidential information through intentional interference in Plaintiffs' business and property interests in the Pungarayacu Tar Sands Heavy Oil Deposit in the Nation of Ecuador.

18.     On March 13, 2006, Jack J. Grynberg of Denver, Colorado and a partner formed a company called Cotundo Minerales S.A., an Ecuadorian company, with a capital of $2,500.00 duly registered in Quito, Ecuador.  The owners of Cotundo Minerales S.A. are RSM Production Corporation, an affiliate of Grynberg Petroleum Company with 90% interest, and Archidona Minerales S.A., a Panamanian corporation with (10%) interest.  The necessary expenses and capital investment were covered in the same proportions.

19.     Thereafter Cotundo made an application to the Government of Ecuador for exclusive mining concessions comprising contiguous 77,070 hectares [195,757.8 acres].  The applications were made in March of 2006 and were granted almost immediately by the Ministry of Mines of Ecuador, starting March, April and May of 2006.  These consessions were exclusive and were granted for a period of thirty (30) years.  Under the Mining Law of Ecuador, there was a possibility for an extension for an additional thirty (30) years.  The concession period comprises both exploration and production.  These concessions are individual licenses, each one covering various amounts, the largest being 5,000 hectares which is approximately 12,350 acres, all covering the Pungarayacu Heavy Tar Sands Oil Deposit. Plaintiffs' Ecuador concessions are officially labeled as Blocks A-3, A-4, A-5, B-1, B-2, B-3, B-4, B-5, C-1, C-2, C-3, C-4, C-5, D-1.1, D-5, E-2, and E-3 in the Pichincha Mineral District of Ecuador. Exhibit 1 attached hereto is a copy of the official documents (in Spanish) for Block A-3 which include Plaintiffs' Application Petition, map of Block A-3, correspondence, the official approval of the concession by the Ecuador Ministry of Energy and Mines granting title of Block A-3 to Cotundo Minerales, S.A., and related official documents. Exhibit 1 is provided as an example, the other Block applications and official grants of title are similar, differing only in the details pertinent to each specific Block and the dates each was granted by the Ecuador Ministry of Energy and Mines.

20.     The geographic descriptions of the Block concessions, as required by regulations, were duly published as part of the official approval notifications by the government of Ecuador. The area of the subject licenses and the Plaintiffs' success in acquiring them thus became public information available to the whole world in 2006.

21.     Jack J. Grynberg, a registered Professional Engineer, with a Professional Engineer's Degree in Petroleum Refining Chemical Engineering from the Colorado School of Mines, a Professional Engineer's Petroleum Production Degree also from the Colorado School of Mines, and all but a thesis with a Doctorate in geophysics, carefully examined, interpreted, and compiled all of the technical data for the Pungarayacu field covered by Plaintiffs' concession areas.  Mr. Jim Ford, an American consultant to Archidona, and a resident of Houston, Texas and a former resident of Ecuador, had assembled the data and delivered it to Mr. Grynberg.  Mr. Ford also made six (6) trips to Ecuador with one (1) extensive trip to the license and surrounding areas in question.

22.     Cotundo Minerales was legally constituted under Ecuadorian law, local advisors and representatives were engaged by the company, as well as a local ecological consulting firm to prepare the environmental assessment and impact study which was submitted to the Government, approved and made public.  In addition, Mr. Ford participated in the planning of community meetings to get the support of the local population for Plaintiffs' project, which would give them extensive employment, income, health care and education.  Mr. Grynberg investigated the various processes that could be applied to commercialize the subject project.

23.     When all of the investigation was completed, including the ecological study, Mr. Grynberg went to work to obtain the best heavy tar sand processing available.  In the search process of investigating the various processes, including those used in the Athabasca Tar Sands

in Canada and the production of oil emulsion technology, called Orimulsion in Venezuela, Jack

Grynberg discovered that Ivanhoe Energy, Inc., a company in Bakersfield, California, had a

potential process utilizing the recovery and upgrading of hydrocarbons from tar sands.

24.     In approximately August of 2006, Mr. Grynberg contacted Defendant David R.

Martin, the representative of the Ivanhoe corporate parent, and whom he knew to have been the

former President of Occidental Petroleum Company, a subsidiary of Occidental Corporation, in

California.  He called David Martin at his offices in Bakersfield, California.  David Martin was

very interested in the Plaintiffs' Pungarayacu Field Tar Sand Project.  Mr. Martin requested

information about the Plaintiffs' Pungarayacu concessions from Jack Grynberg who mailed him

a detailed proprietary and confidential report on the Pungarayacu Field, the Plaintiffs'

government concessions and the project.  Subsequent to mailing him the report, Jack Grynberg

supplemented with an email dated August 18, 2006, information on Grynberg Petroleum

Company.  Copies of two August 18, 2006 emails are attached hereto as Exhibit 2.

25.     Jack Grynberg subsequently learned that Defendant Robert M. Friedland is the

founder, controlling shareholder, and Executive Chairman and CEO of Ivanhoe Energy, Inc.  In

the mid-1980's Mr. Friedland was the principal owner and CEO of Galactic Resources, the

company that created the infamous environmental disaster at the Summitville Mine, Colorado.

Further investigation revealed that the U.S. EPA settled its federal lawsuit (Case No. 96-N-1213,

U.S. District Court for Colorado) with Mr. Friedland and his associates for $52,000,000.00 to

cover part of the cleanup of the Summitville Mine.

26.     David Martin informed Jack Grynberg that Ivanhoe was in the process of

finalizing a joint venture with Petrobas of Brazil to exploit heavy oil deposits to the east of

Pungarayacu by the name of Tiputini, Ichipingo, and Panachoa; and, therefore, would be very

8

interested in a similar joint venture in Ecuador with Cotundo. For the Brazilian joint venture Ivanhoe with Petrobas, Ivanhoe's proprietary process would be used with Ivanhoe paying its negotiated minority share of the operation on a ground floor basis. Mr. Martin requested a fifty percent (50%) share participation by Ivanhoe in Plaintiffs' Pungarayacu Field Tar Sand Project, while Mr. Grynberg offered ten percent (10%) participation. In a telephone negotiation, Mr. Martin and Mr. Grynberg verbally settled for a twenty percent (20%) participation by Ivanhoe if the deal went forward.

27.     The Pungarayacu Field Tar Sand Project information that Jack Grynberg supplied to David Martin was confidential and unique proprietary information; and David Martin agreed that it was so and would be kept as such. Said information was to be returned to Jack Grynberg if no deal was finalized in writing.

28.     The  southern edge of the Pungarayacu deposit is located on the Napa River, a navigable tributary of the Amazon River extending from Peru to Brazil on the Atlantic coast. The Napa River joins the Amazon River to the south of Ichitos in Peru.

29.     An idea was developed by Jack Grynberg, with the help of a lifelong friend of his, Carlos Castillo, the former President and Chief Executive of Maraven Oil Company, a major Venezuelan oil producer that was producing a million barrels of oil per day at that time. Maraven Oil Company is now part of Petrobas de Venezuela S.A. (PDVSA). A process used in Venezuela called Orimulsion, based on tar sands from the Orinoco Heavy Oil Tar Sand Deposits, would be the proper and most economic way to exploit a portion of the Pungarayacu deposits. The Orimulsion process was known to Carlos Castillo who, together with his son-in-law, created the original commercialization of the Orinoco Tar Sands Deposit and would be perfect for a portion of the Pungarayacu Deposit.  The process would use 60% hydrocarbons from the heavy

oil tar sands from Pungarayacu and 40% water creating an emulsion that is widely used in different parts of the world, including Brazil, Canada, and Italy for electric power generation. This potential emulsion, which Plaintiffs have called Ecumulsion, would replace coal-fired fuel and would be much easier and cleaner to use. Ecumulsion would have very little ash compared to coal that has vast amounts of ash and, therefore, creates an ecological problem dealing with the disposal of such coal ash.  The Ecumulsion could fetch an international price comparable to fuel oil. The process is best described in the Plaintiffs' Pungarayacu Deposit report submitted to David Martin, a copy of which is attached hereto as Exhibit 3. Jack Grynberg determined that while existing information from ARCO and from PetroCanada indicated potentially recoverable reserves of seven (7) billion barrels of heavy oil; there could easily be approximately fifteen (15) billion barrels or more of recoverable hydrocarbons from the Pungarayacu tar sands.  Jack Grynberg informed David Martin of his interpretation dealing with the Greater Pungarayacu Deposit. This interpretation was over twice the previously published estimates of oil in place.

30.    After delivering this confidential information to David Martin, Jack Grynberg was invited to visit Bakersfield and inspect an experimental operation of the process proprietary to Ivanhoe, which David Martin informed Jack Grynberg was purchased from the inventor fairly recently for over $10,000,000.00.  Jack Grynberg thereafter tried to make arrangements to visit this so-called pilot plant operation, which really it was less than a pilot plant. By the time Jack Grynberg was ready to go to Bakersfield in December of 2006 or January 2007, David Martin's staff gave Jack Grynberg the run-around and therefore Jack Grynberg never visited Defendants' operation in Bakersfield.  Sensing a runaround by Ivanhoe, Jack Grynberg requested Ivanhoe and David Martin return to Grynberg all of the Plaintiffs' Pungarayacu Deposit confidential and proprietary information which Ivanhoe had in its possession. After further investigation Jack

Grynberg discovered that the patent on the Ivanhoe process was to expire in 2009, and no operator in Canada's vast Athabasca Tar Sand deposits was interested in using it. Thus the Ivanhoe process has never had a commercial application to date.

31.     In August of 2006, David Martin sent a study of the process and its advantages to Jack Grynberg, a copy of which is attached hereto as Exhibit 4.  The process was created by ISG, known as Industrial Services Group, and was prepared for the benefit of Jack Grynberg.

32.     David Martin told Jack Grynberg, before he got the information from Ivanhoe, that Jack Grynberg could "upload it" in September of 2006.

33.     Because in early 2008, the government of Ecuador changed certain tax provisions and was preparing to unilaterally suspend the Ecuadorean Mining Law, Cotundo Minerales S.A. was uncertain as to the regulations under which it had to operate and make the necessary additional investments in the project. Therefore, in March 2008, Cotundo Minerales S.A. filed a motion with the government to declare a condition of *force majeure* under the license terms while it and the government resolved those issues.

34.     On March 17, 2008 Jim Ford learned from Plaintiffs' consultant, Bayardo Merizalde, that Robert Friedland of Ivanhoe Energy was in Quito and had started negotiations for the Plaintiffs' Pungarayacu deposit with the Government of Ecuador.  (See Exhibit 5). Reportedly PetroEcuador personnel made a trip later to Bakersfield, California to inspect this so-called technology of Ivanhoe and the testing operation it had outside of Bakersfield, California.

35.     On April 18, 2008, the Government of Ecuador nationalized the Plaintiffs' Pungarayacu Tar Sands Deposit. See Exhibit 6.

36.     The October 28, 2008 *Oil and Gas Journal* reported that Ivanhoe Energy was awarded the concession over Block 20, which is the block covering all of Plaintiffs' previoiusly

acquired concessions covering the Pungarayacu Heavy Oil Field Deposits.  A copy of the press release is attached hereto as Exhibit 7.  This Exhibit 7 shows that after acquiring licenses to the Pungarayacu Heavy Oil Field Deposits, Friedland had adopted Grynberg's interpretation of oil in place at 15 – 20 billion barrels, over twice the maximum previously reported volume of 7 billion barrels.

37.     The Ivanhoe's October 8, 2008 (Exhibit 8) press release indicates a concession agreement has been signed by Ivanhoe with PetroEcuador for Block 20, and that the potential income from the concession will be $37 per barrel to Ivanhoe and as much as $40 billion in revenue from Pungarayacu to PetroEcuador.

38.     Plaintiffs learned from their Ecuador sources that the key to this project was Mr. Jose Fabricio Correa Delgado, the older brother of President Raphael Correa Delgado of Ecuador, who acts as a Senior Advisor to his younger brother the President of the Republic of Ecuador. Upon information and belief, Defendant Jose Fabricio Correa Delgado demanded and received cash and valuable gifts from his co-Defendants as his payment to expedite award of the Pungarayacu Block 20 concession to the Ivanhoe Defendants.

39.     Upon information and belief,  Friedland violated the U.S. Foreign Corrupt Practices Act, 15 U.S.C. § 78 et seq. and the Interstate and Foreign Travel to Aid Racketeering Act, 18 U.S.C. § 1952 et seq., by bribing government officials, including Defendant Jose Fabricio Correa Delgado, in the Nation of Ecuador and engaging in monetary transactions in proceeds from specified unlawful activities (18 U.S.C. § 1957). The Plaintiffs reported this information to the F.B.I., and the Colorado Assistant U.S. Attorney Mr. Michael Carey, the same prosecutor who previously prosecuted Friedland in Colorado.

40.     On October 28, 2008, the Government of Ecuador requested Cotundo Minerales S.A. to pay rentals on one of Plaintiffs' properties that the Ecuador Government nationalized.

41.     As of the present time, Cotundo Minerales S.A. and its principal shareholders have invested in excess of $1,500,000.00 in the Pungarayacu project.

42.     Defendant Ivanhoe Energy Inc owns one hundred percent of its subsidiary Ivanhoe Energy Latin America Inc, which in turn owns one hundred percent of its subsidiary Ivanhoe Energy Ecuador Inc. See Exhibit 9.

43.     Defendants David Martin and Robert Friedland completely dominate and control all three Ivanhoe Defendants, Ivanhoe Energy, Inc., Ivanhoe Energy Latin America, Inc., and Ivanhoe Energy Ecuador, Inc. In particular, Ivanhoe Energy Ecuador, Inc. is the alter ego of Friedland and Martin, and Ivanhoe Energy Ecuador, Inc. intentionally and wrongfully interfered with Plaintiffs' business prospects, especially the ownership of the concessions for Plaintiffs' Pungarayacu Heavy Oil Field Deposit project in Ecuador that had been described and interpreted for Martin on a confidential basis.

44.     A review of Ivanhoe's corporate filings with the SEC shows that at no time during 2007 and through March 5, 2008 did Ivanhoe reveal any interests in South American oil prospects. In its summary of its May 12, 2008 Quarterly Report for the first quarter of 2008 (Exhibit 10), Ivanhoe announced a new focus on Latin America and the formation of Defendant Ivanhoe Energy Latin America Inc. In its summary of its Quarterly Report for the second quarter of 2008 (Exhibit 11), Ivanhoe did not make any announcements concerning Ecuador. In its summary of its Quarterly Report for the third quarter of 2008 (Exhibit 12), Ivanhoe announced the creation of Ivanhoe Energy Ecuador Inc. and the signed contract for a concession of Block

20, the block covering all of the Pungarayacu Heavy Oil Field Deposits and formerly owned by Plaintiffs.

45.    Plaintiffs' Pungarayacu Heavy Oil Field Deposit concessions have been illegally nationalized by Ecuador without compensation, obviously for the sole purpose to immediately transmit those concessions to the Ivanhoe Defendants.

## FIRST CLAIM FOR RELIEF

### Fraud

46.    Plaintiffs hereby incorporate by reference those allegations contained in Paragraphs 1 through 45 as though fully set forth herein.

47.    Defendants made knowing false representations of material facts to Plaintiffs regarding the Defendants' use and treatment of Plaintiffs' confidential information concerning the Pungarayacu Tar Sands Heavy Oil Deposit in the nation of Ecuador.

48.    Defendants made their false representations with the intent that the Plaintiffs would rely on the representations. Plaintiffs were justified in their reliance.

49.    Defendants made false inducements, material misrepresentations and breached promises to Plaintiffs regarding Defendants' use and treatment of Plaintiffs' confidential information concerning the Pungarayacu Tar Sands Heavy Oil Deposit in the nation of Ecuador. Defendants did so in order to induce Plaintiffs' justified reliance and use Plaintiffs' confidential information in an unauthorized manner and in unauthorized circumstances for their personal benefit.

50.    This fraud by Defendants has caused vast damages and losses to the Plaintiffs. Plaintiffs have suffered and continue to suffer losses including the value of the Ecuadorean

licenses to Plaintiffs, and the gain or benefit of the misappropriated monies to the Defendants and are entitled to statutory remedies to recover those vast damages and losses.

51.      Plaintiffs request compensatory damages, exemplary damages, and treble or exemplary damages, as well as attorneys' fees and costs for this claim.

## SECOND CLAIM FOR RELIEF

### Intentional and Tortious Interference with Prospective Unique Business Advantages

52.      Plaintiffs fully incorporate paragraphs 1-51 above, and claim against Defendants for damages for intentional tortious interference with prospective business advantages.

53.      The Defendants have intentionally and improperly interfered with Plaintiffs' ongoing, transparent and active business relationship with the Government of Ecuador, and Plaintiffs' prospective business advantages arising out of the issuance of an exclusive oil exploration, development and production license by the Nation of Ecuador to Plaintiffs, as required by the exclusive March-May 2006 licenses.

54.      The Defendants' actions have caused damage to Plaintiffs in that they have prevented Plaintiffs from developing vast heavy oil reserves in Ecuador for the benefit of Ecuador and its People as well as the United States, in reducing drastic American shortages of hydrocarbons and eliminating American dependence on oil from the Middle East and from Venezuela.

55.      Plaintiffs request compensatory damages, exemplary damages, and treble or exemplary damages, as well as attorneys' fees and costs for this claim.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

56.     Plaintiffs incorporate fully paragraphs 1-55 above, as though fully set forth

herein, and claim against the Defendants for their unjust enrichment at Plaintiffs' expense in that

Defendants:

(a)     used a benefit provided by Plaintiffs in an unauthorized, surreptitiously  and

unfair manner; and

(b)     retained that benefit conferred on Defendants by Plaintiffs without paying fair

compensation for it and for that matter no compensation at all.

57.     This Defendants accomplished by using Plaintiffs' confidential unique technical

and scientific and transportation of end product information concerning the Pungarayacu Tar

Sands Heavy Oil Deposit in the Nation of Ecuador as aforesaid, without paying a penny to

Plaintiffs, and privately profiting from the unlawful use of Plaintiffs' confidential information

concerning the vast Pungarayacu Tar Sands Heavy Oil Deposit in the nation of Ecuador.

59.     Plaintiffs request compensatory damages, treble damages, exemplary damages, as

well as statutory damages, attorneys' fees and costs, as well as disgorgement of all profits made

by Defendants and any John Does 1 – 10 assignees to Plaintiffs.


## FOURTH CAUSE OF ACTION

### Civil Conspiracy to Commit Fraud

60.     Plaintiffs hereby incorporate by reference those allegations contained in

Paragraphs 1 through 59, as though fully set forth herein.

61.     Defendants had an agreement to defraud Plaintiffs by inducing Plaintiffs'

disclosure of Plaintiffs' confidential proprietary technical, scientific, transportation and

marketing information concerning the vast Pungarayacu Tar Sands Heavy Oil Deposit in the

nation of Ecuador, when they intended to unlawfully divert that confidential information to their own benefit. By this conspiracy, Defendants profited secretly, even as Plaintiffs lost their licenses for the Pungarayacu Tar Sands Heavy Oil Deposit in the nation of Ecuador.

62.     This conspiracy by Defendants has caused Plaintiffs billions of dollars in damages as outlined above. Plaintiff therefore claims actual damages from Defendants and any John Does 1 – 10 assignees in an amount to be proven at trial, and exemplary, statutory, and "gain or benefit" damages in accordance to Colorado statutes (C.R.S. § 5-12-102(a)) in addition, as well as attorney fees and costs.

## FIFTH CAUSE OF ACTION

### RICO

63.     Plaintiffs hereby incorporate by reference those allegations contained in Paragraphs 1 through 62, as though fully set forth herein.

64.     Defendants violated the federal Racketeer Influenced and Corrupt Organizations Act (RICO)(18 U.S.C. § 1961 et seq.) in that Defendants continually engaged in a pattern of racketeering activity as follows:

(a)     Defendants associated together in a criminal enterprise to willfully bribe Ecuadorian government officials to cancel Plaintiffs' licenses for the Pungarayacu Tar Sands Heavy Oil Deposit in the nation of Ecuador contrary to the provisions and status of the Foreign Corrupt Practices Act.

(b)     As alleged above, Defendants willfully, wrongfully and fraudulently stole Plaintiff's confidential information for Pungarayacu Tar Sands Heavy Oil Deposit in the nation of Ecuador in furtherance of their criminal enterprise.

(c)    Defendants criminal enterprise affected interstate commerce in the United States by interfering with Plaintiffs lawful oil exploration, development, production and marketing business across state lines within the United States and across international boundaries.

(d)    Defendants used the racketeered-generated income from their criminal enterprise for their own benefits and operations.

(e)    Defendants criminal enterprise deprived Plaintiffs of their lawful property rights in the Pungarayacu Tar Sands Heavy Oil Deposit in the nation of Ecuador and caused Plaintiffs' vast monetary damages.

65.    Plaintiffs request compensatory damages, exemplary damages, and treble or exemplary damages, as well as attorneys' fees and costs for this claim.

WHEREFORE, Plaintiffs claim for judgment against Defendants and any John Does 1 – 10 assignees upon such causes of action and for such amount of special, general, and exemplary damages as may be proved at trial, for costs, expenses, attorney fees, interest, and for such other further and other relief as may be ordered by this Court.

PLAINTIFFS DEMAND A TRIAL BY THIS COURT AND A DULY CONSTITUTED JURY

Respectfully submitted this 20th day of November, 2008

By:    s/ Roger A. Jatko

Roger A. Jatko, CAR# 20346
Michael W. Coriden, CAR# 10168
Grynberg Petroleum Company
Prentice Point, Suite 500
5299 DTC Boulevard
Greenwood Village, CO 80111-3321

Telephone: (303) 850-7490
Facsimile: (303) 850-7498
E-mail:  r.jatko@grynberg.com
                m.coriden@grynberg.com

**ATTORNEYS FOR PLAINTIFFS**

*A duly signed physical copy of this document
is on file at the office of Roger A. Jatko, Esq.
pursuant to CRCP 121 § 1-26(9).*

<u>VERIFICATION</u>

Jack J. Grynberg, being first duly sworn, deposes and states that he is over the age of 21 years, of sound mind and that he makes this verification voluntarily. Jack J. Grynberg states that he has read the foregoing VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL and that the factual allegations set forth therein are true and correct to the best of his knowledge, information and belief.

<u>s/ Jack J. Grynberg</u>
Jack J. Grynberg

STATE OF COLORADO                )
                                                         ss.
COUNTY OF ARAPAHOE          )

Subscribed and sworn to before me this 20th day of November 2008 by Jack J. Grynberg.

Witness my hand and official seal.                    <u>s/ Karen M. Hutchison</u>

Notary Public

My commission expires: May 8, 2010