IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Case No. 08-cv-02528-WDM-BNB

JACK J. GRYNBERG, et al.,

    Plaintiffs,

  v.

IVANHOE ENERGY, INC., et al.,

    Defendants.

_____

**ORDER ON MOTION FOR ATTORNEY FEES AND COSTS**
_____

    This matter is before me on Defendant Jose Fabricio Correa Delgado's ("Correa") Corrected Motion for Attorney Fees and Costs (ECF No. 121) seeking $106,971.86 in attorney fees and costs incurred with the law firm of Davis, Graham & Stubbs, LLP and $36,552 in attorney fees and costs incurred with Ecuadoran counsel for a total claim of $143,523.86. The parties have fully briefed the issues and I am sufficiently advised in the matter without further argument, written or oral.

### Background

    For convenience of all concerned, I repeat the background summarized in my Order on Motions to Dismiss and Appeal of Magistrate Judge Decision (ECF No. 112):

    This case surrounds the Pungarayacu Tar Sands Heavy Oil Deposit (the "Pungarayacu Field") in the Nation of Ecuador ("Ecuador"). According to Plaintiffs'

PDF Final

Original Complaint (ECF No. 1),[1] in March, April, and May 2006 Plaintiffs Grynberg and Cotundo Minerales, S.A. ("Cotundo") obtained a mining concession from Ecuador granting them exclusive rights for thirty years for exploration and production of approximately 195,757.8 acres in the Pungarayacu Field.  In researching methods to extract the reserves in the Pungarayacu Field, Grynberg contacted Ivanhoe Energy ("Ivanhoe"), a company that had a process utilizing the recovery and upgrading of hydrocarbons from tar sands which potentially could have been useful in the Pungarayacu Field.  Allegedly, Grynberg and Ivanhoe representatives discussed, over emails and phone calls, the possibility of a joint venture to exploit the heavy oil deposits in the Pungarayacu Field, and exchanged written information including a report containing Grynberg's technical analysis of the Pungarayacu Field and a report detailing Ivanhoe's process and its advantages.

Subsequently, in March 2008 Grynberg learned that Ivanhoe representatives were in Quito, Ecuador negotiating for a concession to exploit the Pungarayacu Field. In April 2008, Ecuador nationalized the Pungarayacu Field and indicated that it would declare certain undeveloped mining concessions expired.  It is not clear if Plaintiffs' mining concessions to the Pungarayacu Field were declared expired, but in October 2008, Ivanhoe, through a subsidiary, was awarded a different concession to the

---

[1] Plaintiffs have filed an Amended Complaint (ECF No. 40).  The Amended Complaint, however, was filed after Correa filed an answer (ECF No. 25) to the Original Complaint but without leave of court or written agreement from opposing parties as required by Fed. R. Civ. P. 15(a)(2).  Furthermore, the Amended Complaint removes all allegations concerning Correa as its purpose was to remove Correa as a defendant from the case.  Therefore, I look to the Original Complaint for purposes of this Order.

Pungarayacu Field covering the entire area for which Plaintiffs' had previously held the concession.

With respect to the allegations against Correa, Plaintiffs allege that they learned from "their Ecuador sources" that Correa, as the older brother to President Raphael Correa Delgado of Ecuador, had demanded and received cash and valuable gifts from the other Defendants in exchange for expediting the award of the concession to the Pungarayacu Field to Ivanhoe and its subsidiaries.  (Compl., ECF No. 1 ¶ 38.)  The complaint also alleges that Defendant Robert M. Friedland bribed Ecuadorian Government officials, including Correa, and engaged in "monetary transactions in proceeds from specified unlawful activities."  *Id.* ¶ 39. There are no other allegations in the complaint relating to Correa.

On January 20, 2009, Correa both answered the complaint (ECF No. 25) and filed a motion to dismiss for lack of personal jurisdiction, insufficient service of process, and *forum non conveniens* (ECF No. 26).  Plaintiffs did not respond to Correa's motion to dismiss, instead filing a motion to voluntarily dismiss Correa without prejudice (ECF No. 35) on February 4, 2009.[2]   I ordered Correa to respond to Plaintiffs' motion for voluntary dismissal (ECF No. 36).  Before Correa responded, however, Plaintiffs filed an Amended Complaint (ECF No. 40), which removed Correa as a defendant from the

---

[2]  Plaintiffs initially filed their motion for voluntary dismissal on February 3, 2009 (ECF No. 28), but this document was stricken for failure to follow the local rules (*see* ECF No. 34).  Plaintiffs refiled their motion for voluntary dismissal without prejudice on February 4, 2009 (ECF No. 35).

case and deleted all allegations regarding Correa from the complaint.[3]  Notably, however, the Amended Complaint still alleges that the key to Ivanhoe's procurement of the concession to the Pungarayacu Field was based on "access" to the Ecuadorean President (although without specifying what type of access) and that the remaining defendants bribed Ecuadorean government officials (although without specifying which government officials).  (ECF No. 40 ¶ 37–38.)   Correa responded to Plaintiffs' motion for voluntary dismissal without prejudice on February 17, 2009 (ECF No. 45), arguing that although dismissal was warranted, I should impose three conditions on the dismissal: (1) Plaintiffs be held liable for all of Correa's attorneys' fees and costs; (2) the false allegations against Correa be stricken from the Complaint; and (3) Plaintiffs be required to comply with their outstanding discovery obligations.  Correa also answered the Amended Complaint (ECF No. 46).

On February 10, 2009, based on the jurisdictional issues raised in the case, Magistrate Judge Boland ordered disclosure requirements and discovery stayed pending further order of the court, but ordered Plaintiffs to respond to Correa's written discovery requests. (ECF Nos. 43, 44).  Plaintiffs filed a motion for a protective order (ECF No. 47) requesting that they not be compelled to answer two of Correa's discovery requests (specifically, Interrogatory No. 7 and Request No. 6) because it would subject the witnesses to needless invasion of their privacy, retaliation, and harassment in Ecuador.  Plaintiffs further argued that Correa's dismissal from the case would render

---

[3] As discussed *supra*, the Amended Complaint was not filed in compliance with Rule 15(a)(2) as it was filed after Correa answered the Complaint and without leave of court or the opposing parties' written consent.

the evidence irrelevant. After a hearing on the issue, Magistrate Judge Boland denied Plaintiffs' motion for a protective order and again ordered Plaintiffs to respond to Correa's discovery requests. (*See* ECF Nos. 60, 61.)

Five days after Magistrate Judge Boland's order, Plaintiffs filed a motion for voluntary dismissal of Correa with prejudice (ECF No. 62). Plaintiffs moved for reconsideration or, alternatively, a stay of the discovery order (ECF No. 65) and appealed Magistrate Judge Boland's order (ECF No. 68). Magistrate Judge Boland granted a stay with respect to his discovery order "pending a ruling by the district judge about whether he will impose conditions on the dismissal of Mr. Correa from the case and, if so, whether facts relating to the allegations of ¶38 of the Original Complaint are relevant to the conditions he intends to impose." (ECF No. 69 at 2.) In support of the stay Magistrate Judge Boland cited the fact that Plaintiffs had since moved for dismissal *with prejudice* and noted that it was appropriate to defer to me the determination of whether disclosure was necessary to my resolution of the issues. On March 17, 2009, Correa responded to Plaintiffs' motion for voluntary dismissal with prejudice (ECF No. 72), arguing again that although dismissal was warranted, exceptional circumstances, such as Plaintiffs' alleged bad faith in bringing the lawsuit against Correa based on false accusations, existed such that Correa was entitled to an award of attorneys' fees.

Subsequent to my order dismissing Correa I granted motions to dismiss the remaining defendants by my September 30, 2009 order (ECF No. 125) and judgment entered thereon dismissing the amended complaint without prejudice (ECF No. 127). Plaintiffs' motion for reconsideration and to alter or amend judgment was denied (ECF

No. 165). I note that Defendant Robert M. Friedland's motion for sanctions was granted in parted by my September 30, 2009 order (ECF No. 126) which was followed by an order granting Defendant Friedland's motion for attorney fees (ECF No. 166). Plaintiffs have appealed the dismissals.

Discussion

Correa's fee claims rest on alternative bases: Colorado law, in particular Colo. Rev. Stat. § 13-17-201, or Ecuadoran law.

Focusing on the claim under Colorado law, this court's jurisdiction is based upon diversity of citizenship and I must apply the substantive law of the forum state, Colorado, and in particular, the attorney fee statutes which are considered substantive. *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000). As Correa urges, the particular statute applicable here is Colo. Rev. Stat. § 13-17-201, which provides:

> In all actions brought as a result of a death or an injury to personal property occasioned by the tort of any other person where any such action is dismissed on the motion of the defendant prior to trial under Rule 12(b) of the Colorado Rules of Civil Procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action. . . .

To satisfy this statute, two conditions must be met, the action must be in tort and it must be dismissed pursuant to C.R.C.P. 12(b). Plaintiffs' complaint stated the series of tort claims, including fraud, intentional and tortious interference with business advantage and civil conspiracy to commit fraud. Accordingly, the first condition is met.

With respect to the second factor, the complaint was dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over Correa. This satisfies the second factor as the Tenth Circuit has expressly determined that § 13-17-201 applies

when the case is dismissed pursuant to Fed. R. Civ. P. 12(b) even though the statute only expressly refers to Colo. R. Civ. P. 12(b). *Jones v. Denver Post Corp.*, 203 F.3d at 757 n.6 ("§ 13-17-201 expressly applies only to actions dismissed under Rule 12(b) of the Colorado Rules of Civil Procedure. However, we find the statue applies with equal force where a federal court dismisses a pendant state tort pursuant to Fed. R. Civ. P. 12(b)(6).") The same reasoning applies to dismissal for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). Given that both elements of this section have been met, an award of attorney fees to Correa is mandatory. *See* Colo. Rev. Stat. § 13-17-201 (stating that defendant "shall have judgment for his reasonable attorney fees . . .") (emphasis added); *Keft v. Adolph Coors Co.*, 170 P.3d 854, 859 (Colo. App. 2007) ("an award of attorney fees is mandatory when a trial court dismisses a tort action under CRCP 12(b).").

Plaintiffs seek to avoid this result by positioning themselves to fall within an exception to the statutory mandate recognized by Colorado courts. First, if a claimant voluntarily dismisses his/her claim pursuant to Rule 41, then by definition the dismissal is not pursuant to C.R.C.P. 12(b) or its federal equivalent and, therefore, the statute is inapplicable. Further, the confession of a motion to dismiss has been recognized as the "functional equivalent" of dismissal under Rule 41 so that imposing a sanction in such a circumstance would "exalt form over substance without advancing any public policy interest, and would lead to an absurd and illogical result." *Employers Ins. of Wausau* v. *RREEF-USA Fund-II (Colorado), Inc.*, 805 P.2d 1186, 1188 (Colo. App. 1991). *Houdek v. Mobile Oil Corp.,* 879 P.2d, 425 (Colo. App. 1994) summarizes Colorado law

to be: "By implication, § 13-17-201 allows a plaintiff to escape liability for attorney fees by seeking a voluntary dismissal or by filing a stipulation of dismissal, or by confessing to a defendant's motion to dismiss under C.R.C.P. 12(b)."  However, I note that the exception in *Wausau* appears to apply to a situation where a plaintiff confesses the motion to dismiss "in such a manner that defendant is not required to expend additional efforts beyond the filing of its motion." 805 P.2d at 1188.  Plaintiffs urge that their numerous motions to dismiss bring them within this exception to avoid attorney fee liability.

Correa replies that plaintiffs do not fall under an explicit or implicit exception to the statute, principally because the motions were never granted by my order.  Further, Correa argues that even if a Rule 41 dismissal been entered or effectuated, an award of attorney fees would typically be a condition of the dismissal.

Each party accuses the other of engaging in procedural posturing for improper purposes, one to avoid attorney fees, the other to impose them.  Indeed, a review of the record and the parties' extensive filings indicate that from almost the onset of the litigation there was significant likelihood that Correa would be dismissed but rather than focusing on that simple result, the parties appear to be positioning themselves with regard to attorney fee liability, which has become a $143,536.86 issue.  The image of the fatal dance between the mongoose and cobra comes to mind.

Each party bears some responsibility for this circumstance.  Plaintiffs initiated the action against Correa and apparently failed to effect service of process.  Thus, for several weeks, from November 20, 2008, the date the complaint was filed, until January

20, 2009, the date Correa's answer was filed, Plaintiffs were procedurally empowered to dismiss Correa from this action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) without court involvement. Such dismissal would have been without prejudice, Rule 41(a)(1)(B) and, in accordance with the above authority, without attorney fee liability. Plaintiffs did not do so but instead waited until after Correa had answered, on January 20, 2009 (ECF No. 25), to file their motion to dismiss him without prejudice on February 4, 2009 (ECF No. 35). Because Correa had answered, Plaintiffs could no longer unilaterally dismiss their complaint and instead the action could only be dismissed by stipulation with Correa under Rule 41(a)(1)(A)(ii) or by court order "on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2).

As noted, rather than stipulating, however, Correa's February 17, 2009 Response (ECF No. 45) sought to condition dismissal on attorney fees, costs, and other matters. Interestingly, Correa did not seek dismissal with prejudice at that time, which Plaintiffs ultimately sought.

On this record, I conclude that Plaintiffs are not shielded from some attorney fee liability pursuant to section 13-17-201. They did not timely file notice of dismissal pursuant to Rule 41(a)(1)(A) prior to Correa's motion to dismiss, which would have exempted them from any liability under section 201.[4] Further, although Colorado law allows considering a confession of a motion to dismiss or any motion seeking dismissal after the answer pursuant to Rule 41(a)(2) to be the equivalent of a voluntary dismissal

---

[4]Had Plaintiffs filed their notice of dismissal prior to January 20, 2009, the date the motion to dismiss was filed, not only would there be no fee liability, $53,345.00 of Correa's total fees billed of $99,963.50 would not have been charged.

prior to answer or motion for summary judgment pursuant to Rule 41(a)(1)(A), see *Wausau*, 805 P.2d at 1188, such a dismissal is pursuant to "terms the court considers proper," Rule 41(a)(2), and applies where the confession was done "in such a manner that defendant is not required to expend additional efforts beyond the filing of its motion." *Wasau*, 805 P.2d at 1188. The facts here show that significant additional effort was required to resolve the issues presented by Plaintiffs' assertion of apparently unfounded claims, which were repeated in the proffered Amended Complaint even though Correa was no longer named as a defendant. Similarly, it was readily apparent that Correa had not been properly served. Nonetheless, Plaintiffs did not promptly confess Correa's motion to dismiss but rather filed a new motion seeking dismissal on their own terms, which then required further briefing and litigation. Therefore, because of the extensive legal issues briefed and argued, I conclude that Plaintiffs' attempted dismissal was not the equivalent of a Rule 41(a)(1) dismissal and it should remain subject to section 201 attorney fee liability and the conditions I consider proper under Rule 41(a)(2). That liability, however, should be limited to the time spent and expenses incurred prior to Correa being notified of Plaintiffs' intent to dismiss, sometime on or before February 3, 2009.

Turning to the fees claimed, Correa submits three billings from his attorneys, Davis, Graham & Stubbs LLP, for work and expenses through February 27, 2009 consisting of $99,963.50 in attorney fees and $7008.36 in expenses, for a total of $106,971.86 (ECF No. 116-5). These fees and expenses are properly supported by affidavits opining as to the reasonableness of the hours spent and rates charged,

including the opinion of an independent counsel, David B. Wilson, stating that the hours billed and rates charged were reasonable for lawyers in the Denver market for this type of work. Wilson Aff., ECF No. 115.

Plaintiffs dispute Correa's fee entitlement in whole or in part, but they do not challenge the rates. They do challenge the over 75 hours billed in the motion to dismiss and other charges for discovery and the answer as unreasonable. However, they do not support such allegations with any evidence by affidavit or otherwise. I will therefore rely on Correa's supported claim in determining the reasonableness of the fees.[5]

The parties do not demonstrate the precise time that Correa was informed of Plaintiffs' willingness to dismiss before Plaintiffs' motion was filed on February 4, 2009 (ECF No. 35). The Davis, Graham, & Stubbs invoice dated March 24, 2009 indicates Correan's counsel had knowledge as of February 3, 2009. ECF No. 116-5, 16 ("Confer with T. McNamara regarding Plaintiffs' request to dismiss J. Correa from case and strategize best response."). Before that date, the attorney fee charges totaled $64,079.00[6] and expenses totaled $4041.82[7].

---

[5]Correa also argued entitlement to fees under Ecuadoran law if I did not award fees under Colorado law. Given the award in this order, I do not address this claim and I also note that any such claim has not been adequately supported by proof as required by local rule and my procedures. Under the circumstances of this case, I also decline to award fees for preparing the motion for attorney fees, including the expert fees of independent counsel.

[6]Fees charged in January were $11,106; in February $51,143.50; and $1829.50 in March before February 3, 2009, totaling $64,079.

[7]Expenses charged in January were $1020.48; in February $2822.54; and $198.80 in March before February 3, 2009, totaling $4041.82.

Although Plaintiffs assert, without evidentiary support, that hours spent on various matters prior to February 3 were excessive, I can only rely on the uncontested testimony of Correa's counsel and expert that the hours and rates were not excessive, which, fortunately or unfortunately, do not appear unreasonable in today's lawyer market in Denver for this type of litigation.

Accordingly, on this record, it is ordered:

1. Defendant Jose Fabricio Correa Delgado's Corrected Motion for Attorney Fees and Costs (ECF No. 121) is granted in part and denied in part.

2. Plaintiffs shall pay Defendant Correa awarded attorney fees in the amount of $64,079.00 and costs or expenses in the amount of $4041.82.

DATED at Denver, Colorado, on September 30, 2010.

BY THE COURT:

s/ Walker D. Miller
United States Senior District Judge