IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Walker D. Miller

Civil Action No. 08-cv-02528-WDM-BNB

JACK J. GRYNBERG, an individual;
COTUNDO MINERALES S.A., an Ecuadorian company;
RSM   PRODCUTION CORPORATION, a Texas corporation; and
ARCHIDONA MINERALES, S.A., a Panama corporation

        Plaintiffs,

v.

IVANHOE ENERGY, INC., a Canadian corporation;
IVANHOE ENERGY LATIN AMERICA INC., a Canadian corporation;
IVANHOE ENERGY ECUADOR, INC., a Canadian corporation;
ROBERT M. FRIEDLAND, an individual;
DAVID R. MARTIN, an individual; and
JOHN DOES 1-10, potential assignees of IVANHOE ENERGY ECUADOR, INC.,
        Defendants.

---

## ORDER ON MOTION FOR ATTORNEYS' FEES AND COSTS

---

      This matter comes before me on the Motion for Attorneys' Fees and Costs filed by Ivanhoe Energy, Inc., Ivanhoe Energy Latin America Inc., Ivanhoe Energy Ecuador, Inc., Robert Friedland, and David Martin (collectively, "Defendants") on November 13, 2009 (ECF No. 153).  I have reviewed the parties' filings and find that oral argument is not required.  For the reasons set forth below, I will grant the motion in part.

BACKGROUND

      In the Amended Complaint, filed February 29, 2009, plaintiffs Jack Grynberg, Contundo Minerales S. A., RSM Production Corporation, and Archidona MInerales, S. A. (collectively, "Plaintiffs") brought claims against Defendants for fraud, intentional and

tortious interference with prospective unique business advantages, unjust enrichment, civil conspiracy to commit fraud, and violation of the federal Racketeer Influenced and Corrupt Organizations Act (RICO) (18 U.S.C. § 1961 *et seq.*).  *See* Amended Compl., ECF No. 40.[1]

Defendants moved to dismiss Plaintiffs' complaint for lack of personal jurisdiction. (ECF No. 18).  I granted this motion and dismissed the case without prejudice, finding that the exercise of personal jurisdiction over Defendants in the State of Colorado was not proper under any of the relevant inquiries.  Judgment entered on my order on October 2, 2009, and Defendants now seek their attorneys' fees and costs incurred in defending this action.

As an initial matter, I must determine whether the law Defendants' rely on in their motion for attorneys' fees, C.R.S. § 13-17-201, and for costs, C.R.S. § 13-16-113(2), governs this case.

<u>APPLICABLE LAW: ATTORNEYS' FEES</u>

Section 13-17-201 provides, in relevant part:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

Although section 13-17-201 refers only to dismissals under the Colorado rules, the Tenth Circuit has held it applies "with equal force when a federal court dismisses a pendent state tort [action]" pursuant to federal Rule 12(b).  *Jones v. Denver Post Corp.*, 203 F.3d 748, 757 (10th Cir. 2000).

---

[1]     I have determined that the Amended Complaint is the operative pleading for purposes of these proceedings.  Order on Various Motions, at 10 (ECF No. 125).

1.    Choice of Law

Plaintiffs contend that Colorado law–specifically section 13-17-201–does not apply

to the resolution of the attorneys' fees issue in this case under a choice of law analysis.

They argue that Defendants' reliance on the statute is inconsistent with their position taken

in the motion to dismiss, *i.e.*, that Colorado has no connection to this litigation.

I have subject matter jurisdiction in this case based upon the federal question

presented by the RICO claim and on either (or both) diversity jurisdiction or supplemental

jurisdiction for the state law tort claims.[2]   28 U.S.C. §§ 1331, 1332, 1367.   Accordingly, I

must apply the substantive law of Colorado, including choice of law rules, to issues arising

under state law. *Jones*, 203 F.3d at 757 ("When exercising jurisdiction over pendent state

claims, we must apply the substantive law of the forum state . . . just as we would if our

jurisdiction rested on diversity of citizenship") (quoting *Lytle v. City of Haysville*, 138 F.3d

857, 868 (10th Cir. 1998)); *BancOklahoma Mortg. Corp. v. Capital Title Co.*, 194 F.3d 1089,

1103 (10th Cir. 1999) (rule for applying substantive law of forum state "also applies when

a federal court exercises supplemental jurisdiction over state law claims in a federal

question lawsuit").   Attorneys' fee statutes are considered substantive in the Tenth Circuit.

*Jones*, 203 F.3d at 757.

The Colorado Supreme Court applies the "most significant relationship" test from the

Restatement (Second) of Conflict of Laws to resolve choice of law questions in tort cases.

*United States Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd.*, 582 F.3d 1131, 1143

---

[2]      In the Amended Complaint, Plaintiffs assert jurisdiction is proper based on
diversity of citizenship.  18 U.S.C. § 1332.  In their Response to the Motion for
Attorneys' Fees and Costs, they assert a pendent jurisdiction analysis is proper.

(10th Cir. 2009) (citing *AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509-10

(Colo. 2007)).  This test requires that I consider the following principles:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

*Id.* (quoting Restatement (Second) of Conflict of Laws § 6(2), 145.

The Tenth Circuit directs that I look to the following contacts in applying these

principles:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

*Id.* at 1143-44.

Plaintiffs advocate consideration of these factors, but their analysis centers on the

parties' conduct giving rise to the litigation itself, not on the events supporting Defendants'

claim for attorneys' fees.[3]  While I have already found that neither Defendants themselves

---

[3]      In their response to an earlier motion for attorneys' fees, that filed by defendant Jose Fabricio Correa Delgado, Plaintiffs argued that I should apply section

nor their alleged actions have sufficient nexus to Colorado to support exercise of personal jurisdiction, this is no longer the relevant inquiry.[4] I agree with Defendants that I must apply the considerations of the "most significant relationship" test in the context of the specific issue before me: the appropriateness of an award of attorneys' fees to Defendants based on the events of the litigation itself. *Id.* at 1144 (the relevant contacts of the "most significant relationship" test should be applied to the specific issue at hand and thus vary accordingly).

Considering the relevant contacts, although Defendants are not domiciled or otherwise present within the state, the remaining contacts weigh in favor of Colorado law. Both the injury to Defendants of being subjected to litigation in Colorado and Plaintiffs' actions in instigating the litigation occurred in Colorado, and the relationship between the

---

13-17-201. Applying the factors of the "most significant relationship" test to the specific issue of the attorneys' fee motion, *i.e.*, litigation in Colorado courts, the relationship between Correa and his attorneys in Colorado, compensation for Colorado attorneys, and Colorado's policy of discouraging unnecessary litigation, Plaintiffs concluded that Colorado law should apply. *See* Response at 13 (ECF No. 123). They now argue the opposite, changing their focus back to the issue of the conduct underlying the tort claims rather then the conduct of the litigation.

[4]      To the extent Plaintiffs argue Defendants' position on the issue of personal jurisdiction precludes reliance on section 13-17-201, they improperly conflate choice of law analysis with minimum-contacts jurisdictional analysis. These are "distinct" inquiries. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481-82 (1985).
        Furthermore, I agree with Defendants that applying the same analysis to the availability of an award of attorneys' fees under section 13-17-201 as to the question of personal jurisdiction would lead to the absurd result of removing Rule 12(b)(2) dismissals from the scope of the attorneys' fee statute, a result clearly not intended by the Colorado legislature. *See Gognat v. Ellsworth*, 224 P.3d 1039, 1055 (Colo. App. 2009) ("To hold that a party may obtain dismissal based on a lack of personal jurisdiction under C.R.C.P. 12(b)(2), but may not then seek attorney fees under section 13-17-201 without waiving that objection would be inconsistent with the statute") (rejecting argument that request for attorneys' fees as part of a motion to dismiss constituted a general appearance).

parties as parties to the litigation is centered here.

Addressing the principles of the Restatement, I reach the same result.  Although Plaintiffs' failure to propose an alternative to section 13-17-201 makes application of these principles more difficult, I conclude that Colorado's policy of discouraging unnecessary litigation, the protection of Defendants' justified expectations in the protection offered by section 13-17-201, the certainty and predictability of result, and the ease in determination and application of the law to be applied all weigh in favor of finding that Colorado has the most significant relationship to the issue of an attorneys' fee award.

I conclude that section 13-17-201 applies under this choice of law analysis.

2.    RICO Claim

Plaintiffs next argue that the RICO statute preempts application of section 13-17-201 to preclude an award of attorneys' fees incurred in defending the RICO claim.  They assert that Defendants' failure to request fees under a federal statute or to apportion fees among federal and state claims bars recovery of any fees at all.  Plaintiffs rely on an unpublished decision of this Court, *General Steel Domestic Sales, LLC v. Denver/Boulder Better Bus. Bureau*, No. 07-cv-01145-DME-KMT, 2009 WL 1292780 (D. Colo. May 8, 2009).  In that case, Judge Ebel declined to grant a motion for attorneys' fees pursuant to section 13-17-201, finding, without discussion, that the Colorado statute did not apply to federal § 1983 claims or to a federal RICO claim because its application was preempted.[5]  *Id.* at *2.

---

[5]    In this case, although Judge Ebel noted that RICO preempted application of section 13-17-201, his focus appears to be more on the dismissed civil rights claims, where there is actual conflict between grounds for awarding attorneys' fees in 42 U.S.C. § 1988 and section 13-17-201.  2009 WL 1292780 at *2 (citing *State v. Golden's Concrete*, 962 P.2d 919, 926 (Colo. 1998)).

Defendants respond that there is no preemption in this case because the pertinent provisions of RICO and section 13-17-201 do not conflict.

Congress's power to preempt state law originates in the Supremacy Clause of the Constitution.  U.S. Const. art. VI.  The Supreme Court has recognized that preemption occurs:

> [1] when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, [2] when there is outright or actual conflict between federal and state law, [3] where compliance with both federal and state law is in effect physically impossible, [4] where there is implicit in federal law a barrier to state regulation, [5] where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or [6] where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Louisiana Pub. Serv. Comm'n v. Federal Commc'ns Comm'n*, 476 U.S. 355, 368 (1986). None of these grounds of preemption is present here.  The civil RICO statute, 18 U.S.C. § 1964, neither states that it preempts state law nor expresses any clear intent to do so. Nor is there any "outright or actual" conflict between section 1964(c)'s award of attorneys' fees to a prevailing RICO plaintiff and section 13-17-201.  As the two attorneys' fees provisions apply in distinct circumstances–awarding fees to the prevailing plaintiff after judgment on the one hand and to the prevailing defendant upon dismissal of claims under Rule 12(b) on the other hand–it is difficult to conceive of any situation where a conflict, direct or otherwise, could arise.  The remaining grounds of preemption are likewise inapplicable.  I conclude that RICO does not preempt the application of section 13-17-201. *See Albright v. Attorneys' Title Ins. Fund*, No. 2:03-CV-517, 2009 WL 1065401 at *2 (D. Utah April 20, 2009) (finding no support for argument that federal RICO statute preempted an award of attorneys' fees under state racketeering statute; where federal statute allows

prevailing plaintiff to recover fees, the statute is silent on issue of award of fees to prevailing defendant).

To the extent Plaintiffs' arguments may be read to suggest that, even if not preempted, section 13-17-201 does not apply to non-state law tort claims, the Colorado courts have rejected this position. *US Fax Law Center, Inc. v. Henry Schein, Inc.*, 205 P.3d 512, 517-18 (Colo. App. 2009). When an action contains a mix of claims, "fees may be awarded if the action is primarily a tort action." *Id.* (affirming award of attorneys' fees under section 13-17-201 where dismissed action included three state tort claims and one claim under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227).

In the present case, Plaintiffs asserted four tort claims under Colorado law and one RICO claim. I hold the action is primarily a tort action and that, under Colorado law, an award of attorneys' fees for defending the entire action is appropriate under section 13-17-201. Given this conclusion, I need not reach Plaintiffs' arguments concerning failure to apportion fees between the tort and RICO claims.

Having determined that section 13-17-201 applies to this action and to all claims asserted therein, an award of attorneys' fees is mandated by the express language of the statute. *Crandall v. City and County of Denver*, 238 P.3d 659, 665 (Colo. 2010) ("the express statutory language of sections 13-16-113(2) and 13-17-201 mandate awards of costs and attorney fees to the defendant in the event that a plaintiff's tort action is dismissed pretrial on a . . . 12(b) motion to dismiss"). The only issue left to my discretion is the task of determining what is a reasonable fee in this case. *Id.* at 663.

<u>APPLICABLE LAW: COSTS</u>

The costs statute, section 13-16-113(2), contains language similar to the attorneys'

fee statute discussed above:   "In all actions brought as a result of a death or injury to person or property occasioned by the tort of any other person, where any such action is dismissed prior to trial under rule 12(b) . . . , the defendant shall have judgment for his costs."

Plaintiffs argue that the costs statute, C.R.S. § 13-16-113(2), does not apply in this case because federal law controls assessment of costs.   They reiterate their arguments with regard to preemption and failure to allocate costs among the tort and RICO claims. Finally, they claim that the amount of costs requested is unreasonable.

While Plaintiffs are correct that federal law generally governs an award of costs in diversity cases, this rule does not apply where there is an explicit state statutory authority for such an award.   *Smith v. Frazzini*, 139 F.R.D. 667, 668 (D. Colo. 1991) (citing *Chaparral Res., Inc. v. Monsanto Co.*, 849 F.2d 1286, 1291-93 (10th Cir. 1988)).[6]   *See also Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, No. 07-cv-00839-LTB-BNB (D. Colo. Nov. 20, 2008) (applying section 13-16-113).

I have already disposed of Plaintiffs' argument concerning preemption and apportionment in the context of the attorneys' fee statute.   My conclusions apply equally to the availability of costs under section 13-16-113.   For the reasons discussed above, I conclude section 13-16-113(2) mandates an award of costs to Defendants.   Thus, only the issue of reasonableness remains.

---

[6]      Plaintiffs assert that *Smith* bars application of section 13-16-113(2) in this case because of the presence of a federal law claim.  I disagree.  Unlike the present case, *Smith* did not involve any state law tort claims at all but was purely a federal civil rights case.

REASONABLENESS OF ATTORNEYS' FEES CLAIMED

With their motion for attorneys' fees, Defendants provide affidavits and billing sheets from their attorneys.  The amounts claimed, per defendant and per law firm, are as follows.

Baker Botts, representing the Ivanhoe Corporate Defendants, employed six attorneys from their Washington, D.C. and Dallas offices.  Their fees claimed for the years 2008 and 2009 are:

| Attorney | Year | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| James A. Baker IV | 2008 | $675 | 20.8 | $14,040.00 |
| | 2009 | $700 | 32.9 | $23,030.00 |
| Timothy S. Durst | 2008 | $600 | 17.8 | $10,680.00 |
| | 2009 | $650 | 184.6 | $119,990.00 |
| Todd C. Donohue | 2008 | $425 | 65.7 | $27,922.50 |
| | 2009 | $445 | 354.4 | $157,708.00 |
| Ryan Bangert | 2008 | $345 | 136.3 | $47,023.50 |
| | 2009 | $365 | 227.1 | $82,891.50 |
| Rachel B. Cochran | 2008 | $350 | 43.7 | $15,295.00 |
| | 2009 | $380 | 97.4 | $37,012.00 |
| Nicole Gordon | 2008 | $230 | 60.2 | $13,846.00 |
| | 2009 | $265 | 153 | $40,545.00 |
| **TOTALS:** | | | **1,393.9** | **$589,983.50**[7] |

---

[7]      According to the Declaration of Todd C. Donohue, the total amount of time billed to the Ivanhoe Corporate Defendants by Baker Botts for work performed between November 26, 2008 and September 24, 2009 was 2766.7 hours for a total of $1,066,221.50.  The Ivanhoe Corporate Defendants do not seek an award of $476,238.00, representing time charged by legal assistants and other personnel, time billed for document review after entry of the discovery stay, time billed for tasks not directly related to the litigation, and "a substantial amount of their fees associated with developing and investigating facts related to the merits of the case."  Motion for

Motion for Attorneys' Fees and Costs, Exhibit 1, Declaration of Timothy S. Durst, at 7-8

(ECF No. 153-1).   The claimed fees are explained on a task-by-task basis in the

Declaration of Todd C. Donohue.  Motion for Attorneys' Fees and Costs, Exhibit 2 (ECF No.

153-2).

The Ivanhoe Corporate Defendants were also represented by the law firm of

Fognani & Faught PLLC.  Six attorneys at this firm performed work related to this litigation.

| Attorney | Hourly Rate | Hours | Total |
|---|---|---|---|
| John D. Faught | $475 | 84.6 | $40,185.00 |
| Perry L. Glantz | $395 | 66.6 | $26,307.00 |
| Nancy A. Kostro | $375 | 47.4 | $17,775.00 |
| Fritz W. Ganz | $275 | 4.3 | $1,182.50 |
| Tiffany L. Warner | $250 | 3.2 | $800.00 |
| Kendall R. McLaughlin | $225 | 36.6 | $8,235.00 |
| **TOTALS:** | | **242.7** | **$94,484.50[8]** |

Motion for Attorneys' Fees and Costs, Exhibit 3, Declaration of John D. Faught, at 3 (ECF

No. 153-3).

The law firm of Holley, Albertson & Polk, P.C. represented defendant David R.

Martin.  Martin seeks an award of $11,613.00, representing 55.3 hours billed by attorney

---

Attorneys' Fees and Costs, Exhibit 2, Declaration of Todd C. Donohue, at 2 (ECF No.
153-2).

[8]      According to the Declaration of John D. Faught, the Ivanhoe Corporate
Defendants do not seek reimbursement of $147,455.00 in attorneys' fees paid to
Fognani & Faught.  These fees relate to time charged by legal assistants, block billed
time entries, and work duplicated by the efforts of the attorneys at Baker Botts.  Motion
for Attorneys' Fees and Costs, Exhibit 3, Declaration of John D. Faught, at 3 (ECF No.
153-3).

Scott D. Albertson at an hourly rate of $210.[9]  Motion for Attorneys' Fees and Costs, Exhibit

4, Declaration of Scott D. Albertson, at 2 (ECF No. 153-4).

The law firm of Haddon, Morgan, Mueller, Jordan, Mackey & Foreman, P.C.

(Haddon Foreman) represented defendant Robert M. Friedland.  Three attorneys at this

firm performed work related to this litigation.

| Attorney | Hourly Rate | Hours | Total |
|---|---|---|---|
| Ty Gee | $425 | 84.1 | $35,742.50 |
| Harold A. Haddon | $425 | 79.6 | $33,830.00 |
| Rachel A. Bellis | $315 | 4.85 | $1,527.75 |
| TOTALS: | | 168.55 | $71,100.25[10] |

Motion for Attorneys' Fees and Costs, Exhibit 5, Declaration of Ty Gee, at 5 (ECF No. 153-

5).

In sum, Defendants seek an award of $767,181.25 in attorneys' fees and $41,893.25

in costs (discussed below), for a total award of $809,074.50.

Defendants support their motion for attorneys' fees and costs with the opinion of

independent counsel, Roger P. Thomasch, as to the reasonableness of the hours spent

and the rates charged.  In his affidavit, Mr. Thomasch applies the factors set forth in Rule

---

[9]    Martin is not seeking reimbursement of $281 in fees for time charged by an associate of Holley, Albertson & Polk for legal research or for certain hours spent by Mr. Albertson on "insurance matters."  Motion for Attorneys' Fees and Costs, Exhibit 4, Declaration of Scott D. Albertson, at 2 (ECF No. 153-4).

[10]    According to the Declaration of Ty Gee, defendant Friedland does not seek reimbursement of $23,989.00 in attorneys' fees paid to Haddon Foreman.  These fees represent work related to the Motion for Sanctions, paralegal time, time charged by Lee Foreman, and time spent on insurance issues.  Motion for Attorneys' Fees and Costs, Exhibit 5, Declaration of Ty Gee, at 5 (ECF No. 153-5).

1.5 of the Colorado Rules of Professional Conduct.  Motion for Attorneys' Fees and Costs,

Exhibit 6, Affidavit of Roger P. Thomasch, at 7-29 (ECF No. 153-6).  Based upon his

analysis of these factors, he opines that the claimed fees are reasonable.  *Id.* at 5-6.

Plaintiffs challenge the reasonableness of Defendants' claimed fees, tendering the

affidavit of Michael H. Berger in support of their position.   Mr. Berger opines that a

reasonable attorneys' fee in this case would be between $233,163.41 and $258,020.10.

Response to Motion for Attorneys' Fees and Costs, Exhibit 1, Affidavit of Michael H. Berger,

at 7 (ECF No. 162-1).

I note that Defendants do not defend their hours in the reply brief.  Further, I agree

with Mr. Berger that the mere fact that a sophisticated client is willing to pay a high hourly

rate for aggressive representation does not, by itself, render the resulting fees reasonable.

A client may choose the "Cadillac" of law firm representation, but such a client is not

automatically entitled to have an opposing party make the car payments.  *See Praseuth v.*

*Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005) (aggressive litigation strategy may

be approved by client but this is not standard under fee shifting statutes).   As discussed

below, I conclude that the hourly rates charged by Baker Botts were excessive and that the

hours claimed by Baker Botts, Fognani & Faught, and Haddon Foreman must be reduced.

I accept as reasonable the hourly rates of the attorneys at Fognani & Faught,

Haddon Foreman, and Holley, Albertson & Polk.  I further accept as reasonable the hours

worked by Holley, Albertson & Polk.  Given no reduction in the rates or hours charged by

Holley, Albertson & Polk on behalf of Defendant Martin, I will award the full $11,613.00

claimed by Mr. Martin.

With regard to the hours claimed by Haddon Foreman, I have reviewed the billing

13

sheets of Harold Haddon and Ty Gee and agree with Mr. Berger that there appears to be some duplication of effort between these attorneys. Considering Mr. Berger's estimation of duplication of 13.5 hours, I reduce the hours claimed by 7 hours. Both attorneys charged the same hourly rate of $425. Multiplying that rate by 7 hours yields a reduction in claimed attorneys' fees in the amount of $2,975.00. Deducting this amount from the total claimed yields an attorneys' fee award to Haddon Foreman of $68,125.25 ($71,100.25 less $2,975.) on behalf of Defendant Friedland.

With regard to the fees charged by Fognani & Faught on behalf of the Ivanhoe Corporate Defendants, I agree with Mr. Berger that there was no compensable need for two competent law firms to represent the same clients beyond the minimal need for local counsel. Mr. Berger suggests allowing $24,835.00 in fees to Fognani & Faught based on his reduction of hours to time limited to local counsel duties; he deducts an additional $10,000 to account for duplication. I accept his calculations as reasonable and will award an attorney fee of $24,835.00 to the Ivanhoe Corporate Defendants for work performed by Fognani & Faught.

Berger's primary disagreements with Defendants' claim are the hourly rates and the time charged by Baker Botts. It has long been recognized in this Circuit that the hourly rate should be based on the local or Denver market. *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983). He opines that the hourly rates claimed by Baker Botts exceed the market rates of the Denver legal community. He proposes the following adjustment in Schedule II to his Affidavit:

14

| Attorney | Year | Hourly Rate | Adjusted Rate | Hours | Adjusted Total |
|---|---|---|---|---|---|
| James A. Baker IV | 2008 | $675 | **$500** | 20.8 | **$10,400.00** |
| | 2009 | $700 | **$500** | 32.9 | **$16,450.00** |
| Timothy S. Durst | 2008 | $600 | **$500** | 17.8 | **$8,900.00** |
| | 2009 | $650 | **$500** | 184.6 | **$92,300.00** |
| Todd C. Donohue | 2008 | $425 | **$350** | 65.7 | **$22,995.00** |
| | 2009 | $445 | **$350** | 354.4 | **$124,040.00** |
| Ryan Bangert | 2008 | $345 | **$275** | 136.3 | **$37,482.50** |
| | 2009 | $365 | **$275** | 227.1 | **$62,452.50** |
| Rachel B. Cochran | 2008 | $350 | **$250** | 43.7 | **$10,925.00** |
| | 2009 | $380 | **$250** | 97.4 | **$24,350.00** |
| Nicole Gordon | 2008 | $230 | **$230** | 60.2 | **$13,846.00** |
| | 2009 | $265 | **$230** | 153 | **$35,190.00** |
| **TOTALS:** | | | | **1,393.9** | **$459,331.00** |

Mr. Berger averages these rates to reach a blended rate of $329.53 per hour worked by attorneys at Baker Botts.  Berger Affidavit, Schedule II (ECF No. 162-1, p. 28).

Although I perceive Mr. Berger's adjusted rates as on the high side of reasonable attorneys' rates for the Denver market, I will accept his adjusted rates–and the blended rate of $330 per hour[11]–as the rates conceded by Plaintiffs.

I turn now to the issue of the reasonableness of time expended by Baker Botts on the specific tasks set forth in Todd Donohue's Declaration (Exhibit 2 to Motion for Attorneys' Fees and Costs) (ECF No. 153-2).  I note that Mr. Berger agrees that the hours on some

---

[11]     I will round Mr. Berger's blended rate of $329.53 up to $330.

tasks were reasonable but suggests reductions of others.  I agree that some the hours expended on certain tasks should be reduced, and I discuss the bases for those reductions below.

1.      Task:  Case intake

I agree that the 52.4 hours charged by Baker Botts attorneys for "Case intake, initial litigation planning, initial analysis and initial research" is excessive given the nature of this case.  I will reduce the time charged to 40 hours.  At the blended attorney hourly rate of $330, this yields a fee award of $13,200 for this portion of the representation.

2.      Task:  Strategy formulation

Mr. Berger recommends a reduction from 132.4 hours to between 40 to 50 hours for the task of "strategy formulation, supervision of litigation team, direction of case."  I agree, particularly given the number of hours included in the "case intake" task, above.  I will award fees at the blended rate of $330 for 50 hours, resulting in a fee award of $16,500 for this task.

3.      Task:  Document collection and review

The 171 hours claimed by Baker Botts for "document collection and review and preliminary witness interviews" is excessive.  Although this litigation was undoubtedly complex and involved high stakes, the focus in this Court was limited to the issue of personal litigation.  I will reduce the hours claimed to 120.  At the blended rate of $330, this yields a fee award of $39,600 for this task.

4.      Task:  Collection/interviews in Ecuador

I accept the 24.3 hours claimed with regard to the collection of evidence in Ecuador. Applying the blended rate, I will award fees in the amount of $8,019. for this task.

5.      Task:  Collection/interviews in Bakersfield, California

I accept the 49.8 hours charted for the task of collection of evidence from Bakersfield, California.  Applying the blended hourly rate, I will award fees in the amount of $16,434 for this task.

6.      Task:  Collection/interviews in Santa Barbara, California

I accept the 29 hours charted for the task of collection of evidence from Santa Barbara, California.  Applying the blended hourly rate, I will award fees in the amount of $9,570 for this task.

7.      Task:  General investigation of claims

The hours billed for the task of "general investigation of claims, factual development and general legal research" appear to duplicate time billed in other categories.  I will reduce the 87.5 hours claimed to 50 hours.  Applying the blended hourly rate, I will award fees in the amount of $16,500 for this task.

8.      Task:  Preparation of Motion to Dismiss

Mr. Berger opined that the 416.6 hours expended by Baker Botts on the task of "preparation of Motion to Dismiss, including factual investigation, legal research, and jurisdictional discovery issues" was "excessive by any measure."  Berger Affidavit, at 13. I agree.  Even accepting the complex nature of the litigation, I cannot conclude that the legal and factual issues related to the personal jurisdiction question were so complex or novel to warrant more than 200 hours of attorney time on this task.  200 hours at the blended hourly rate result in an award of $66,000 for this task.

9.      Task:  Plaintiffs' Motion to Lift Stay and for Jurisdictional Discovery

Given the Plaintiffs' advisement to the Magistrate Judge that Plaintiffs were not

17

requesting jurisdictional discovery at that time, the 101 hours claimed for the task of "Plaintiffs' Motion to Lift Stay and for Jurisdictional Discovery" is clearly unwarranted. I will award fees at the blended rate based on a total of 25 hours, yielding a fee award of $8,250 for this task.

10.     Task: Preparation of joint scheduling order

I agree with Mr. Berger that the 104 hours charged for the task of "Preparation of joint scheduling order, Rule 26(f) conference, preparation of Rule 26(a) disclosures, and settlement statement" is unreasonable. Because of the stay entered in this case, no Rule 26(a) disclosures were ever filed with the court. Even were such a filing prepared, these disclosures are generally straightforward. I will reduce the hours claimed to 30 and award attorneys' fees of $9,900 for this task.

11.     Task: Dismissal of Defendant Correa Delgado

I accept the 4.5 hours claimed with regard to the dismissal of Defendant Correa Delgado. Applying the blended rate, I will award fees in the amount of $1,485. for this task.

12.     Task: Responding to Plaintiffs' Motion for Summary Judgment

The Baker Botts attorneys claimed 118 hours spent on the task of "Task: "Responding to Plaintiffs' Motion for Summary Judgment - Personal Jurisdiction over Robert Friedland (Summary Judgment Response, Motion to Strike, Motion to Stay Briefing)." Given the duplication of issues between the motion to dismiss and the motion for summary judgment, I agree with Mr. Berger that much of the necessary work related to responding to the summary judgment motion had already been done in connection with preparing the motion to dismiss. The other motions, to strike and to stay, were not complex. I will award 30 hours for this task. Applying the blended rate, the fee award is

$9,900.

13.     Task:  Response to Plaintiffs' Motion to Transfer

I agree with Mr. Berger that the legal issues and factual bases involved in responding to the motion to transfer were not complex.  I will reduce the claimed hours from 82.9 to 20, yielding an award of $6,600 for this task.

14.     Task:  Addressing my notice regarding disqualification

The 20.5 hours claimed for responding to my notice regarding disqualification typify the excessive nature of the hours claimed in most of the task categories.  I will reduce the hours claimed on this task to 10, yielding an award of $3,300.

15.     TOTAL AWARD

Adding the fee awards for each of the fourteen task categories listed above yields a total award of attorneys' fees for time charged by Baker Botts in the amount of $225,258.

## REASONABLENESS OF COSTS CLAIMED

The Ivanhoe Corporate Defendants seek reimbursement for costs incurred by Baker Botts for the following expenditures and in the following amounts:

| Expenditure | Amount |
|---|---|
| Computerized legal research | $14,189.13 |
| Travel to Ecuador & CA (document collection) | $9,523.10 |
| 3rd Party document collection | $11,923.20 |
| Transcripts | $314.15 |
| Translation services | $582.64[12] |

---

[12]     The Ivanhoe Corporate Defendants are not seeking the full amount of $622.64 expended on translation services.

| | |
|---|---|
| Exhibit creation | $628.39 |
| Telephone charges | $247.58 |
| **TOTALS:** | **$37,408.19** |

Durst Declaration, at 9-10 (ECF No. 153-1).

Fognani & Faught's costs at issue are $4,485.06 for computerized legal research. Faught Declaration, at 3 (ECF No. 153-3).

In his affidavit, Mr. Thomasch opines that all claimed costs were "of a type that would reasonably be incurred in defense of an action such as the Lawsuit."[13]  Motion for Attorneys' Fees and Costs, Exhibit 6, at 30. With regard to the specific costs, he opines it was reasonable to incur those costs.[14] *Id.* at 30-31.  Plaintiffs' expert, Mr. Berger, does not address the issue of costs in his affidavit.

Plaintiffs claim the costs requested are unreasonable because: (1) defendants do not explain what computerized legal research was done, why it was necessary, or how the charges were calculated; (2) there may be duplication between the computerized legal research efforts of Baker Botts and those of Fognani & Faught; and (3) the requests for document collection costs and travel expenses are supported only by conclusory assertions of necessity and reasonableness.

Defendants bear the burden of providing me with "sufficient information and supporting documentation" to allow me to "make a reasoned decision for each cost item

---

[13]    Mr. Thomasch expressly does not offer an opinion as to whether the amount of costs for any particular item claimed is reasonable.  Thomasch Affidavit, at 30.

[14]    In his summary of the costs, Mr. Thomasch appears to omit the $4,485.06 claimed by Fognani & Faught for computerized legal research.  Thomasch Affidavit at 6.

presented." *Brody v. Hellman*, 167 P.3d 192, 206 (Colo. App. 2007).  With specific regard

to the claim for computerized legal research costs, Defendants must demonstrate:  "(1) the

client was billed for computerized legal research expenses separate from attorney fees; (2)

the computerized legal research was necessary for trial preparation; and (3) the requested

costs were reasonable."  *Id.*  I have reviewed the invoices attached to the Durst and Faught

declarations and find that the computerized legal research expenses were billed separately

from attorneys' fees.  Motion for Attorneys' Fees and Costs, Exhibits 1 and 3.  Defendants

provide the affidavit of Mr. Thomasch as to the second and third issues.  He opines that it

was reasonable to use computerized legal research to perform the necessary research for

preparation of the motion to dismiss and related briefs and that this type of costs would

reasonably be incurred in this kind of litigation.  Motion for Attorneys' Fees and Costs,

Exhibit 6, at 30.  Although the explanations of necessity and reasonableness in the various

declarations of the attorneys for Defendants may leave something to be desired with regard

to detail as to the specific areas researched and the necessity for that research, I conclude

that, on the record as a whole, I have "sufficient information and supporting documentation"

to allow me to "make a reasoned decision" on the computerized legal research costs.

*Brody*, at 206.  On that record, I find the costs were reasonably and necessarily incurred

in this case.

　　　　Plaintiffs contend that there is "likely" duplication between the computerized legal

research efforts of Baker Botts and those of Fognani & Faught.  Response to Motion for

Attorneys' Fees and Costs, at 25.  Although Defendants' exhibits do not simplify the tasks

of finding specific pages of invoices or of identifying the entries of legal time related to the

computerized legal research, I have reviewed the time entries for the month of December

2008, the month during which the bulk of the computerized legal research at Fognani & Faught was performed. Fognani & Faught Invoice # 5579 (attached to Motion for Attorneys' Fees and Costs, Exhibit 3); Baker Botts Invoice # 1091301 (attached to Exhibit 1). It appears that most of that research centered on service of process issues. During the same time, the majority of the legal research time for Baker Botts focused on jurisdictional and RICO issues. I find only one time entry that included research on service of process, which, as the time entry includes other work performed, I consider a *de minimus* duplication. I decline to reduce the claimed costs for computerized legal research based on duplication.

Plaintiffs take issue with the requests for document collection costs and travel expenses, arguing that the assertions of necessity and reasonableness are conclusory. Given the nature of the claims in this lawsuit and the location of evidence, parties, and potential witnesses, I find Mr. Thomasch's opinions that these costs were reasonable and necessary to be sufficient evidence to support an award of costs for these items.

Finally, Plaintiffs request an evidentiary hearing, citing *Michael A. Cramer, MAI, SRPA, Inc. v. United States*, 47 F.3d 379, 383 (10th Cir. 1995), for the proposition that "an evidentiary hearing is generally preferred, if not required, when factual disputes exist in connection with a request for attorney fees and costs and those disputes cannot be resolved without a hearing." In this case, however, there is no real dispute of fact requiring development of the record. The parties' experts disagree on the reasonableness of the fees and costs claimed by Defendants, but they generally do not take issue with the factual bases for the amounts claimed. I conclude a hearing is not required to resolve the cost issue on the record in this case.

Accordingly, it is ORDERED:

1.    Defendants' Motion for Attorneys' Fees and Costs, filed November 13, 2009 (ECF No. 153) is granted in part and denied in part.

2.    Plaintiffs shall pay the Ivanhoe Corporate Defendants:

   a.    attorneys' fees in the amount of $225,258.00 for work performed by Baker & Botts;

   b.    attorneys' fees in the amount of $24,835.00 for work performed by Fognani & Faught;

   c.    costs and expenses in the amount of $37,408.19 expended by Baker Botts; and

   d.    costs and expenses in the amount of $4,485.06 expended by Fognani & Faught.

3.    Plaintiffs shall pay defendant Robert M. Friedland attorneys' fees in the amount of $68,125.25.

4.    Plaintiffs shall pay defendant David R. Martin attorneys' fees in the amount of $11,613.00.

DATED at Denver, Colorado, on August 1, 2011.

BY THE COURT:

s/ Walker D. Miller
United States District Judge